TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-609 |
| of | : | |
| | : | February 28, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY D. DA VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE FRED AGUIAR, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1. Would a violation of an exclusion order issued by the tribal council of an Indian tribe, prohibiting an individual from entering or occupying real property or structures on the reservation, constitute a misdemeanor under the terms of Penal Code section 602, subdivision (*l*)?

2. What action, if any, would a county sheriff be required to take to enforce an exclusion order issued by the tribal council of an Indian tribe, prohibiting an individual from entering or occupying real property or structures on the reservation?

CONCLUSIONS

1. A violation of an exclusion order issued by the tribal council of an Indian tribe, prohibiting an individual from entering or occupying real property or structures on the reservation, would not constitute a misdemeanor under the terms of Penal Code section 602, subdivision (*l*).

2. A county sheriff would not be required to take any action to enforce an exclusion order issued by the tribal council of an Indian tribe, prohibiting an individual from entering or occupying real property or structures on the reservation.

ANALYSIS

The tribal council of the Chemehuevi Indian Tribe has adopted an ordinance **Footnote No. 1** providing in part:

"a. It is unlawful and constitutes a violation of this Ordinance for any person to enter or remain upon any portion of the Chemehuevi Indian Reservation, if they have been excluded from the Reservation by order of the Tribal Council and they have been personally served with a notice to show cause under Section 9.52.30(a) or 9.52.40 and failed to attend the noticed hearing or, if they attended the hearing, they have been personally served with the order excluding them.

"b.   It is unlawful and constitutes a violation of this Ordinance for any lessee or assignee of Tribal trust land or owner or tenant of housing located on the Reservation to allow a person excluded from the Reservation under this Chapter to enter, occupy or remain upon or within their lease, assignment, home or rental unit, after notice of exclusion has been given as provided in Section 9.52.50." (§ 9.52.10.)

Section 9.52.20 specifies the particular grounds for exclusion, e.g., threatening the peace and quiet or personal safety of persons who live or work on the reservation, cutting down trees, defacing signs, discharging pollutants or toxic waste, and damaging cultural artifacts or grave sites. Section 9.52.30 sets forth the procedures for the issuance of an exclusion order, including notice, service, and pre-exclusion and post-exclusion hearings. Each order of exclusion provides in part:

"You are prohibited from entering or remaining upon the reservation while this order remains in effect. If you violate this order, tribal enforcement officials may remove you and your possessions from the reservation. You may be guilty of criminal trespass under the California Penal Code and subject to arrest and imprisonment."

We are first asked to address whether a violation of a tribal council exclusion order as described above would constitute a misdemeanor under the terms of section 602, subdivision (*l*), of the Penal Code (hereinafter "subdivision (*l*)"). **Footnote No. 2** The statute provides:

". . . [E]very person who willfully commits a trespass by any of the following acts is guilty of a misdemeanor:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(*l*) Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The second inquiry presented is whether a county sheriff would be required to enforce such an exclusion order. We conclude that a violation of the exclusion order in question would not *per se* satisfy the descriptive elements of a criminal trespass as defined in subdivision (*l*); thus, a sheriff would not be authorized to enforce the issuance of such an order. However, the provisions of subdivision (*l*) may be enforced on the reservation where the terms thereof are independently applicable.

Whether California law may be applied to Indian reservations located in the state depends primarily upon the approval of Congress. As stated in *California* v. *Cabazon Band of Mission Indians* (1987) 480 U.S. 202, 207:

"The Court has consistently recognized that Indian tribes retain `attributes of sovereignty over both their members and their territory,' *United States* v. *Mazurie*, 419 U.S. 544, 557 (1975), and that `tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States,' *Washington* v. *Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 154 (1980). It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided. . . .

"In Pub. L. 280 [18 U.S.C., § 1162, . . .] Congress expressly granted six States, including California, jurisdiction over specified areas of Indian country within the States. . . . California was granted broad criminal jurisdiction over offenses committed by or against Indians within all Indian country within the State."

The governing federal law, title 18, United States Code, section 1162, subdivision (a), provides as follows:

> "Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

> "*State or Territory of Indian country affected*

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "California All Indian country within the State.

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . " **Footnote No. 3**

Clearly, under federal law (18 U.S.C., § 1162) California's criminal statutes apply to Indian reservations in the state. Tribal code provisions and orders, on the other hand, do not constitute the criminal laws of the state and have no force and effect elsewhere within California. Such tribal code provisions and orders are not enforceable by a county sheriff either within or without the reservation.

We believe that if a tribal order of exclusion met all of the elements of a trespass as defined in subdivision (*l*), a county sheriff could enforce the provisions of the state law based upon issuance of such an order. The exclusion order in question, however, does not satisfy the requirements of subdivision (*l*) and thus a violation of such an order would not invoke the application of state law.

Specifically, this subject exclusion order is violated by a person who, having been excluded by the tribal council, enters *or* remains on the reservation. (§ 9.52.10, subd. (a).) Further, the order is violated by a person on the reservation (lessee or assignee) who allows an excluded person to "enter, occupy *or* remain" on the reservation. (§ 9.52.10, subd. (b).) However, a violation of subdivision (*l*) requires that the individual both enter *and* occupy real property or structures without the consent of the owner. As explained by the court in *People* v. *Wilkinson* (1967) 248 Cal.App.2d Supp. 906, 909-910:

> "It is not a violation of Penal Code section 602, subdivision (*l*) to enter private property without consent unless such entry is followed by occupation thereof without consent. Nor is it a violation to occupy without consent if the entry be made with consent. This is so because the conjunction used is `and' not `or'. . . ."

In *People* v. *Brown* (1965) 236 Cal.App.2d Supp. 915, 919-920, the court analyzed the issue as follows:

> "Defendants next contend that section 602, subdivision (*l*) by its very terms is not applicable where the entering of a building was with the express or implied consent of the owner. . . .

> "It was stipulated that the bank's premises were open to the public, including the defendants and their associates.

> "Respondent argues that section 602, subdivision (*l*) is applicable where the entry of a building was with the consent of the owner if the owner later withdraws his consent, and that following that withdrawal a person on the premises may become a trespasser. The cases cited for the proposition that an invitation may be withdrawn at any time (*Rogers* v. *Duhart*, 97 Cal. 500,

and *Riechhold* v. *Sommarstrom Inv. Co.*, 83 Cal.App. 173) are both civil cases, and do not involve the issue of criminal trespass.

"As noted above . . . the plain meaning of the words used in the statute should be followed. Section 602, subdivision (*l*) by its terms applies to `entering *and* occupying . . . without . . . consent. . . .'

"Recent enactments of the Legislature, such as Penal Code section 602.5 (1961): `Every person . . . who enters *or* remains . . . without consent of the owner' (italics ours) indicate that the distinction between the use of the word `and' and the word `or' was well understood by the framers of the legislation. Section 602.5 by its wording gives fair warning that either the act of entering or the act of remaining on certain premises without consent will constitute a trespass. Section 602, subdivision (*l*) gives no such warning. There is nothing in the wording of this statute to indicate that it makes criminal the act of occupying without the consent of the owner after an original entry by permission. . . ." **Footnote No. 4**

Hence, an unconsented entry followed by consent to remain, or a consented entry without consent to remain, would violate the terms of the exclusion order in question, but would not violate subdivision (*l*).

We conclude that a violation of an exclusion order issued by the tribal council of an Indian tribe, prohibiting an individual from entering or occupying real property or structures on the reservation would not constitute a misdemeanor under the terms of subdivision (*l*) and thus a county sheriff would not be required to enforce a violation of the order.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the tribal code of the Chemehuevi Indian Tribe are by section number only.
**Footnote No. 2**
No other California criminal statute appears applicable to the particular circumstances presented herein.
**Footnote No. 3**
The term "Indian country" includes all land within the limits of any Indian reservation under the jurisdiction of the United States Government. (18 U.S.C., § 1151.) The application of California's civil laws to activities on Indian reservations is governed by a different federal law. (28 U.S.C., § 1360(a).) While trespass has both civil and criminal aspects, we are concerned here only with the criminal connotation.
**Footnote No. 4**
Penal Code section 602.5 provides in full:
"Every person other than a public officer or employee acting within the course and scope of his employment in performance of a duty imposed by law, who enters or remains in any noncommercial dwelling house, apartment, or other such place without consent of the owner, his agent, or the person in lawful possession thereof, is quilty of a misdemeanor."